UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO PEREZ AMBRIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1]<br><br>    Defendant. | Case No. 12-cv-05486-JST<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS**<br><br>Re: ECF Nos. 15, 16 |

In this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Commissioner's denial of Plaintiff Ambriz's claim for Supplemental Security Income ("SSI"), the parties have filed cross-motions for summary judgment on the question of whether Ambriz is disabled. Alternatively, Ambriz moves for remand for additional proceedings. For the reasons set forth below, the cross-motions for summary judgment are DENIED, and the case is REMANDED for further proceedings.

I. **BACKGROUND**

    A. **Ambriz's Personal, Vocational, and Medical History**

Ambriz was admitted to the John Muir Medical Center on March 22, 2009, after sustaining a gunshot wound to his forehead. AR 376-82. Ambriz was described as having brain matter on his forehead. AR 377. Ambriz underwent a right front craniotomy, cranioplasty, and craniofacial reconstruction while he was hospitalized. AR 370-72. He was discharged on April 30, 2009; his discharge diagnoses were: gunshot wound to the head, depressed skull fracture, acute depression

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. ECF No. 16 at 1 n.1. Colvin is hereby substituted under Federal Rule of Civil Procedure 25(d) for Michael J. Astrue as the defendant in this action.

secondary to gunshot wound, severe cognitive disorder, post-gunshot wound infection and abscess, debridement, and cranioplasty performed. AR 382.

Ambriz was released to the care of his mother after being discharged. AR 426-27. Ambriz received rehabilitative treatment from Rehab Without Walls. AR 460-93. There, Ambriz was diagnosed with moderate to severe deficits in memory, moderate to severe deficits in funds of information, moderate deficits in attention and concentration secondary to impulsivity, and symptoms of depression and anxiety. AR 462. An evaluator determined that Ambriz could benefit from a day treatment program for Traumatic Brain Injury ("TBI") patients. AR 468.

Ambriz tried to obtain care at the Brookside Community Health Center, but he had difficulty locating a facility that would offer him cognitive re-training because of insurance issues, costs, or admission criteria. AR 484-88, 79-83.

Ambriz did not receive treatment for his brain injury from July 2009 to May 3, 2011, but he attended several consultative examinations in connection with his claim for SSI benefits. AR 429-36, 489-97, 506-09.

In July 2009, Ambriz was referred to a psychological evaluation by the agency responsible for developing medical evidence and making initial determinations in pending Social Security disability matters. AR 435-36. Ambriz was examined by Dr. John Prosise, a licensed psychologist. AR 436. Dr. Prosise observed that Ambriz responded in an oppositional manner to the session's prompts, and as a result, "the inevitable deficits of a survivor of a 3/22/09 brain injury by gunshot remained entirely veiled" during the evaluation. AR 435. Dr. Prosise observed that Ambriz's insight and judgment were poor, that he was malingering, and that his "capacity to work with supervisors and rival peers is suspect." AR 435-36.

Also in July 2009, Ambriz attended a neurological evaluation with State agency examiner Dr. Carl Fieser. AR 429-34. Fieser also reported that Ambriz failed to fully cooperate at his evaluation. AR 433. Nevertheless, Dr. Fieser concluded that Ambriz has "physical deficits" as a result of the gunshot would, and that he could be expected to stand and walk a total of four hours in an eight-hour workday and to occasionally lift and carry 10 pounds frequently and 20 pounds occasionally. AR 433. In addition, Dr. Fieser opined that Ambriz would need 24-hour

supervision due to his cognitive deficits. AR 433.

A state agency medical consultant, Dr. Meek, reviewed Dr. Fieser's evaluation of Ambriz, as well as the available medical records, and he concluded that Ambriz was limited to standing or walking "at least 2 hours in an 8-hour workday," to sitting for "about 6 hours in an 8-hour workday," and to lifting or carrying 10 pounds frequently and 20 pounds occasionally. AR 453. Dr. Meek also concluded that Ambriz should never climb ladders, ropes, or scaffolds, and that he should avoid concentrated exposure to workplace hazards. AR 454-55.

In December 2010, Ambriz was referred to another psychological evaluation by his attorney. AR 489. The evaluation was performed by Dr. Lisa Kalich, a clinical psychologist who is board certified in forensic psychology. AR 497. Dr. Kalich reviewed Ambriz's medical records, interviewed Ambriz and his mother, and tested Ambriz. AR 489. Dr. Kalich noted that Ambriz's cooperation was not consistent during the testing and that he responded to her questions in a sarcastic manner. AR 495. Nevertheless, Dr. Kalich concluded on the basis of her interviews and testing that Ambriz suffered from post-traumatic stress disorder and depressive disorder; that he should be provisionally diagnosed with dementia due to head trauma, with a Global Assessment of Functioning ("GAF") of 45; and that he had moderate impairment in connection with daily-living activities, social functioning, concentration, and severe deficits in connection with persistence. AR 495-97.

Ambriz was evaluated a second time by Dr. Prosise at the request of the Administrative Law Judge ("ALJ") in March 2011. AR 14, 506-09. Dr. Prosise observed some oppositional behavior during the examination and noted that this "continuing behavioral overlay may tempt reviewers to discount Mr. Ambriz's underlying deficits as contrived." AR 508-09. Nevertheless, Dr. Prosise concluded that this behavior "did not defeat the assessment, this time." AR 508-09. Dr. Prosise assessed Ambriz's GAF at 40 and concluded that Ambriz's memory indices were in the deficient range and that his intellectual indices were in the borderline to low average range. AR 507-08. He also concluded that Ambriz seemed incapable of adapting appropriately to common workplace requirements, hazards, and changes of routine, and that the examination revealed fixed, circumscribed impairments in Ambriz's ability to carry out spoken instructions

3

1  with adequate concentration without unusual accommodation. AR 509.

### B. Procedural History

Ambriz applied for SSI benefits on April 23, 2009, alleging disability beginning on the date he received the gunshot wound to his head. AR 200-05, 24-34. His application was denied on August 29, 2009, and again upon reconsideration on November 24, 2009. AR 14.

Ambriz filed a written request for hearing before ALJ Richard P. Laverdue, which took place on January 25, 2011. AR 14. Ambriz and his mother, Denise Charrette attended the hearing. AR 14. A vocational expert, Gerald D. Belchick, also attended the hearing at the ALJ's request, but he did not participate in the proceedings. AR 14. The ALJ ordered a supplemental consultive examination of Ambriz, which was performed by Dr. Prosise. AR 14. The ALJ issued a decision on May 3, 2011, finding that Ambriz was "not disabled." AR 11-24.

Ambriz appealed the ALJ's decision on June 21, 2011. AR 199. The Appeal Council denied review on August 21, 2012, making the decision of the ALJ the final decision of the Commissioner of Social Security ("the Commissioner"). AR 1-6. Ambriz then submitted additional evidence to the Appeals Council, namely a psychological report from Dr. Kalich. AR 5, 513-516. The Appeals Council noted that it considered "the additional evidence" and "found that this information did not provide a basis for changing the Administrative Law Judge's decision." AR 1-2. The Appeals Council, however, incorporated the report from Dr. Kalich into Ambriz's record as Exhibit 13F. AR 4, 513-516.

### C. Basis for the ALJ's Decision

#### 1. Standard for Determining Disability

"Under the Social Security Act, to qualify for disability insurance benefits, a claimant must establish: (1) that she is disabled within the meaning of the Social Security Act, i.e., that she was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, 42 U.S.C. § 423(d)(1)(A); (2) that her impairment(s) lasted for a continuous period of not less than 12 months, id.; see also 20 C.F.R. § 404.1509; and (3) that her period of disability began while she was insured for disability insurance benefits, 42 U.S.C. § 423(a)(1)(A)." Thomas v. Barnhart, 278 F.3d 947, 954-55 (9th Cir. 2002) (internal quotation

marks omitted).

"A claimant is disabled if she proves: 1) that she is not presently engaged in a substantial gainful activity; 2) that her disability is severe; and 3) that her impairment meets or equals one of the specific impairments described in the regulations. Even if the specific impairments described in the regulations do not apply, a claimant can make out a prima facie case of disability if she proves, in addition to the first two requirements, that she is not able to perform any work that she has done in the past. If the claimant makes out a prima facie case, the burden shifts to the Commissioner to establish that the claimant can perform a significant number of other jobs in the national economy. The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets her burden, the claimant has failed to establish disability." Id. (internal citations and quotation marks omitted).

In accordance with 20 C.R.F. § 404.1520 and 416.920, the ALJ must perform a five-step sequential evaluation process for finding disability, as follows:

Step 1: Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2: Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3: Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4: Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

> Step 5: Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citations omitted).

### 2. The ALJ's Findings

The ALJ found that Ambriz had not engaged in substantial gainful activity since his disabilities allegedly began (first step); that Ambriz had several severe impairments that affect his ability to perform basic work activities, namely a post gunshot wound to the head, intracranial injury, and residual cognitive deficits of unknown severity (second step); that none of these impairments or combination of impairments were listed in or were the medical equivalent of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (step three). AR at 16-18.

Prior to step four, the ALJ determined Ambriz's Residual Functional Capacity ("RFC"), which measures an individual's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, and concluded that Ambriz could "perform light [unskilled] work as defined in 20 CFR 416.967(b) with no climbing of ladders, ropes, scaffolds (due to potential balance difficulties)" and that "he can perform simple repetitive tasks." AR 18.

At step four, the ALJ found that Ambriz did not have past relevant work. AR at 23. At step five, the final step, the ALJ considered Ambriz's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("the grids") in 20 CFR Part 404, Subpart P, Appendix 2. Using the grids, and without the assistance of a vocational expert, the ALJ concluded that Ambriz is "not disabled" and that Ambriz's exertional limitations had little or no effect on his ability to perform unskilled light work. AR at 23-24. The ALJ also concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can

perform." Id. Based on these findings, the ALJ found Ambriz to be "not disabled" and denied Ambriz's application for SSI benefits. AR 23.

### D. Jurisdiction

The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

A district court may set aside a denial of social security benefits only if the denial is "not supported by substantial evidence or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) (citation omitted).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. (citation and internal quotation marks omitted). "Substantial evidence means more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citation and internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted).

## III. DISCUSSION

Ambriz moves for summary judgment on the question of whether he was disabled as a matter of law during the relevant time period, or in the alternative, for remand for additional proceedings. ECF No. 15 at 1. Ambriz contends that the ALJ erred in concluding that he was not disabled. Specifically, Ambriz argues that the ALJ erred by failing to consider the opinions of Dr. Prosise and Dr. Meek, as well as the testimony of his mother, Denise Charrette, when conducting the RFC assessment prior to step four. Ambriz further argues that the ALJ erred in relying exclusively on the Medical-Vocational Guidelines at step five in light of his non-exertional impairments, namely those identified by Dr. Prosise. Ambriz contends that these non-exertional impairments required the ALJ to solicit and evaluate the testimony of a vocational expert.

The Commissioner opposes Ambriz's motion and moves for summary judgment on the question of disability. The Commissioner argues that the ALJ's determination is adequately supported by portions of the opinions of Dr. Prosise and Dr. Meek, and that the ALJ's RFC

assessment therefore is based on substantial evidence and not legally erroneous. The Commissioner further argues that the ALJ took into account the testimony of Ambriz's mother in conducting the RFC assessment. Finally, the Commissioner contends that the ALJ did not commit error in failing to consult a vocational expert at step five, because "it is appropriate to apply the GRIDS in cases like this were the RFC capabilities are for sedentary or light work and simple repetitive tasks." ECF 16 at 4-5.

### A. The ALJ Failed to Consider the Opinions of Dr. Prosise and Dr. Meek But Not the Testimony of Ambriz's Mother in Connection with the RFC Assessment

Prior to steps four and five, the ALJ is required to determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do in a work setting despite his limitations. See 20 C.F.R. § 404.1545(a). The ALJ must determine the claimant's RFC based on "the limiting effects of all [of the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e).

When the ALJ determines a claimant's RFC, the ALJ is not bound by expert medical opinion on the issue of disability. See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). The ALJ, however, has the burden of stating specific and legitimate reasons for disregarding or rejecting the opinion of an examining physician during the RFC assessment. See Hill v. Astrue, 698 F.3d 1153, 1159-60 (9th Cir. 2012) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.") (citation and internal quotation marks omitted). A failure to state specific and legitimate reasons for rejecting the opinion of an examining physical constitutes legal error. See id. at 1160 (holding that when an ALJ fails to provide an examining doctor's opinion "any degree of review at all, and g[ives] no reasons for doing so," the ALJ commits legal error); see also Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (holding that although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability . . . he cannot reject them without presenting clear and convincing reasons for doing so") (internal quotation marks omitted).

8

1  Here, the ALJ concluded that Ambriz could "perform simple repetitive tasks" and perform

2 unskilled light work "as defined in 20 CFR 416.967(b) with no climbing of ladders, ropes,

3 scaffolds (due to potential balance difficulties)." AR at 18.

4  Ambriz argues that, in reaching this conclusion, the ALJ failed to take into account some

5 of the opinions of Dr. Prosise and Dr. Meek and failed consider the testimony of Ambriz's mother,

6 Denise Charrette, without providing any reasons for doing so. The Commissioner responds that

7 the ALJ's RFC assessment is supported by substantial evidence.

### 1. Dr. Prosise

Dr. Prosise evaluated Ambriz twice. During the first evaluation, which took place in July 2009, Dr. Prosise noted that Ambriz had appeared to have intentionally "defeated his case by responding with a less than chance level of success" to his prompts, and that the "inevitable deficits" of his "brain injury by gunshot remained entirely unveiled" as a result. AR 435.

The second evaluation was conducted at the ALJ's request in March 2011. In his second report, Dr. Prosise reiterated that "[t]he behavioral overlay in 2009 practically veiled the evidence of his brain syndrome altogether" but that

> <u>the claimant's behaviors did not defeat the assessment, this time</u>, which revealed right-hemisphere deficits consistent with the chartered TBI. The fact of the continuing behavioral overlay may tempt reviewers to discount the underlying deficits as contrived. Regardless whether the claimant relinquishes the unfortunate (misleading) behaviors quickly or grudgingly, over time, it need not disqualify his case from advancing to further consideration in the present, successive levels of review.

AR 508 (emphasis added).

Dr. Prosise went on to conclude that that Ambriz "seems incapable of adapting appropriately to common workplace requirements and hazards, and changes of routine." AR 509. This opinion ("the assessment at issue") is favorable to Ambriz, because it demonstrates that Ambriz has significant non-exertional impairments that may affect his ability to do the full range of light unskilled work.

This conclusion by Dr. Prosise is not discussed explicitly in the ALJ's decision, however. The ALJ provides a brief summary of Dr. Prosise's opinions, but the summary is devoid of any discussion or review of Dr. Prosise's ultimate assessment of Ambriz's ability, or lack thereof, to

9

1    adapt to common workplace requirements. Indeed, the ALJ concludes that the only inference that

2    can be drawn from Dr. Prosise's opinion is that "the claimant is capable of understanding,

3    remembering, and carrying out simple instructions." AR 21. In light of this conclusion, it is clear

4    that the ALJ implicitly rejected the assessment at issue altogether. AR 21.

5        Importantly, the ALJ admits that "the claimant may have cognitive difficulties as a result

6    of his injury," but he discounts any such difficulties on the ground that "[Ambriz's] willful

7    behavior with each of the evaluators has [ ] obscured [their] abilities as to preclude any valid

8    assessment of the extent of any limitations —precisely as concluded by Dr. Prosise in his latest

9    evaluation." AR. 22. The statement, however, directly contradicts Dr. Prosise's conclusion that

10   Ambriz's willful behaviors "did *not* defeat the assessment" during his latest evaluation of Ambriz.

11   AR 508 (emphasis added). As such, the ALJ's reasoning for rejecting the assessment at issue does

12   not constitute a legitimate basis for the rejection. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.

13   1996) (holding that where the justification offered by the ALJ for rejecting an examining doctor's

14   opinion "is squarely contradicted by the record, it may not serve as a basis for the rejection of an

15   examining physician's conclusions"); see also Regennitter v. Comm'r of Soc. Sec. Admin., 166

16   F.3d 1294, 1299 (9th Cir. 1999) (holding that "conclusory reasons will not justify an ALJ's

17   rejection of a medical opinion"). The ALJ therefore erred in rejecting the assessment at issue, and

18   this error was not harmless. See Hill, 698 F.3d at 1160 (holding that when an ALJ disregards a

19   medical opinion "based on objective medical evidence" without providing specific and legitimate

20   reasons, the ALJ commits error that is "not harmless").

21       **2.     Dr. Meek**

22       Dr. Meek evaluated Ambriz in August 2009. AR 456. Dr. Meek concluded that Ambriz is

23   limited to at least 2 hours of standing or walking in an 8-hour workday, had occasional postural

24   limitations, and could lift 10 pounds frequently and 20 pounds occasionally ("the opinion at

25   issue"). AR at 453.

26       Ambriz argues that the ALJ failed to consider the opinion at issue in connection with the

27   RFC assessment.

28       The Commissioner concedes that the ALJ's RFC assessment is "not consistent" with the

1    opinion at issue – thus implicitly admitting that the ALJ did not consider the opinion at issue – but
2    he nevertheless argues that "the error is harmless." ECF No. 16 at 6.
3          Upon review of the ALJ's decision, the Court concludes that the ALJ failed to consider the
4    opinion at issue without providing specific and legitimate reasons for doing so. This constitutes
5    legal error that is not harmless. See Hill, 698 F.3d at 1160.

### 3. Denise Charrette

7          Denise Charrette, Ambriz's mother, appeared and testified at the hearing before the ALJ.
8    Ambriz argues that the ALJ failed to consider her testimony in connection with the RFC
9    assessment without providing any reasons for doing so. Ambriz, however, does not identify the
10   testimony that the ALJ allegedly failed to take into account. Because Ambriz does not identify the
11   testimony that the ALJ allegedly failed to consider, the Court cannot conclude that the ALJ
12   committed legal error. The ALJ's decision contains a summary of Charrette's testimony in
13   connection with the RFC assessment, which indicates that the ALJ took her testimony into
14   account. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (holding that an ALJ must take
15   into account the testimony of a lay witness unless he expressly determines to disregard such
16   testimony and gives reasons germane to each lay witness for doing so).

### B. The ALJ Erred in Relying Exclusively on the Grids at Step Five

18         At step five, the ALJ determined that Ambriz is not disabled. The ALJ relied exclusively
19   on the Medical-Vocational Guidelines ("the grids") to reach this conclusion.
20         Ambriz argues that the ALJ erred in relying exclusively on the grids in making his step-
21   five determination because the ALJ was required to solicit the testimony of a vocational expert in
22   light of Ambriz's non-exertional limitations, namely his inability to adapt appropriately to
23   common workplace requirements as opined by Dr. Prosise, and his limited ability to stand or walk
24   during an 8-hour workday as opined by Dr. Meek.
25         The Commissioner argues that the ALJ did not err in relying exclusively on the grids
26   because "it is appropriate to apply the grids in cases like this were the RFC capabilities are for
27   sedentary or light work and simple repetitive tasks." ECF No 16 at 5.
28         At step five, the claimant has already established a prima facie case of disability, and the

11

burden shifts to the ALJ to demonstrate "that the claimant can perform other types of work in the national economy, given the claimant's age, education, [ ] work experience" and RFC. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citation omitted). The ALJ can satisfy this burden "by either (1) applying the Medical-Vocational Guidelines ("grids") in appropriate circumstances or (2) taking the testimony of a vocational expert." Id. (citations omitted).

The ALJ may rely on the grids alone to show the availability of jobs for the claimant "only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.1985). But, "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. In such instances, the [ALJ] must take the testimony of a vocational expert, and identify specific jobs within the claimant's capabilities. Thus, the grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present." Id. at 1340 (internal citations and quotation marks omitted) (emphasis added).

The Court concludes that the ALJ erred in relying exclusively on the grids to conduct its step-five determination because the ALJ failed to satisfy his burden to show that Ambriz's non-exertional limitations do not significantly affect Ambriz's ability to perform the full range of unskilled light work. When presented with "evidence of a significant non-exertional limitation" at step five, an ALJ is required to consider that evidence before determining whether he can rely exclusively on the grids to make his step-five determination. See Aukland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001). If the ALJ chooses to reject that evidence, he is required to "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." See id. Here, Dr. Prosise opined that Ambriz is "incapable of adapting appropriately to common workplace requirements and hazards, and changes of routine;" this opinion constitutes evidence of a significant non-exertional limitation. AR 509. A review of the ALJ's decision reveals that the ALJ failed to consider this opinion at step five and that the ALJ failed to provide any justification for doing so. As such, the ALJ's exclusive reliance on the grids at step five was unjustified and therefore erroneous. See id. (holding that an ALJ's exclusive

"reliance on the grids" was erroneous where the ALJ "failed to set forth the requisite specific and legitimate reasons for rejecting [a medical] opinion" that "provided the ALJ with evidence of a significant non-exertional limitation"). Id. This error warrants remanding the case. See id. (remanding case and requiring the ALJ to "consider testimony from a vocational expert in determining whether [the claimant] is able to engage in any substantial activity" because "the grids do not accurately and completely describe [the claimant's] limitations").

The ALJ also erred in failing to take into account Dr. Meek's opinion regarding Ambriz's limited ability stand or walk during an 8-hour workday. Indeed, the ALJ's step five analysis makes no mention of this assessment by Dr. Meek, and it also fails to provide any justification this omission.

### C. Remand for Additional Investigation Is Appropriate

Generally, when the court finds error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam). A court, however, may credit evidence and remand for an award of benefits where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence is credited." See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) (citations omitted).

Here, remand for additional proceedings is appropriate because certain issues must be resolved before a determination of disability can be made. Specifically, the ALJ, on remand, must conduct a new RFC assessment that incorporates all of the opinions of Dr. Meek and Dr. Prosise, and he also must determine whether the testimony of a vocational expert is necessary at step five in light of all of Ambriz's exertional and non-exertional impairments, including those identified by Dr. Prosise and Dr. Meek.

/ / /

/ / /

/ / /

13

## IV. CONCLUSION

Both cross-motions for summary judgment are DENIED, as outstanding issues preclude a determination as to disability at this point. The case is remanded to the ALJ for additional proceedings, as described above.

**IT IS SO ORDERED**.

Dated: December 8, 2013

JON S. TIGAR
United States District Judge

14